# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 02-1826V
Filed: July 21, 2016
(Not to be Published)

* * * * * * * * * * * * * * * * * * * * * * * * *
LAUREY TEDESCHI,
Parent of J.T.G-T., a minor,

              Petitioner,

              v.

SECRETARY OF HEALTH
AND HUMAN SERVICES

              Respondent.
* * * * * * * * * * * * * * * * * * * * * * * * *

Decision on Attorneys' Fees and Costs; Reasonable Basis; Autism

*Renee Gentry*, Washington, DC, for Petitioner.
*Alexis Babcock*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING FINAL ATTORNEYS' FEES AND COSTS

**HASTINGS,** *Special Master.*

     In this case, under the National Vaccine Injury Compensation Program (hereinafter "the Program")[1], Petitioner seeks, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. After careful consideration, I have determined to grant the request in part, for the reasons set forth below.

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). The statutory provisions defining the Program are also sometimes referred to as the "Vaccine Act."

1

I

**PROCEDURAL BACKGROUND AND RELEVANT FACTS**

On December 10, 2002, Petitioner, through her attorney, filed a Short-Form Autism Petition for Vaccine Compensation, thereby alleging that her minor child, J.T.G-T., was injured by one or more of his early childhood vaccines. The case was assigned to me, and was subsequently stayed on January 15, 2003, pending the outcome of the Omnibus Autism Proceeding ("OAP") test cases.

On August 25, 2003, George G. Tankard, III, became Petitioner's counsel of record.

On January 15, 2008, Petitioner was ordered to file medical records sufficient to determine whether the claim was timely filed. Petitioner filed medical records and a statement of completion on November 20, 2008. (ECF Nos. 23-24.)

On June 10, 2008, Jeffrey Golvash became Petitioner's counsel of record. (ECF No. 25.)

Following the conclusion of the OAP test cases, which found no link between vaccinations and autism under two separate theories, Petitioner was instructed to file an amended petition if she wished to continue this case. (ECF No. 26.) Petitioner filed an amended petition ("Am. Pet.") on April 26, 2012. (ECF No. 42.) The amended petition alleged that vaccinations received by J.T.G-T. on October 11, 2000, aggravated an underlying mitochondrial disorder and triggered either autism-like symptoms or a post-vaccinal encephalopathy resulting in neurological impairment. (Am. Pet., p. 1.) Petitioner also filed an expert report by Dr. Allan Lieberman. (Ex. 3b (ECF No. 43-3).)

On September 24, 2012, Respondent filed a report addressing the allegations of the amended petition, and an expert report by pediatric neurologist Dr. Max Wiznitzer. (ECF No. 46-47.) Respondent contended, *inter alia*, that there is insufficient evidence that J.T.G-T. has a mitochondrial disorder and that his alleged regression was not temporally related to his vaccinations. (ECF No. 46, pp. 10-11.)

On November 27, 2012, I held a status conference, and determined that the case should be stayed until J.T.G-T. underwent testing to determine whether he had a mitochondrial disorder. (ECF No. 48.) On May 31, 2013, Petitioner filed a status report indicating that initial testing was suggestive of mitochondrial dysfunction, but inconclusive as to the presence of a mitochondrial disorder. (ECF No. 51.) Petitioner indicated that although further testing was recommended, she lacked the resources to pursue it and advised that she wished to continue her vaccine injury claim as an encephalopathy claim. (*Id*.)

Petitioner subsequently pursued neurotoxicology testing at the suggestion of her expert, Dr. Lieberman (ECF Nos. 55, 58), and filed a supplemental expert report by Dr. Lieberman on March 25, 2014 (ECF No. 62). The additional test results were filed on April 22, 2014. (ECF No. 64.) Further medical records were filed on June 26, 2014, July 29, 2014, and August 25, 2014. (ECF Nos. 69, 74, 76.)

Following these filings, Petitioner again reported that she intended to seek further testing. (ECF No. 77.) Petitioner advised that she was not yet ready to schedule a hearing pending

exploration of neuroimmunology testing. (*Id.*)  Petitioner was allowed the opportunity to seek this testing. (ECF No. 78.)

On December 4, 2014, Petitioner's counsel advised in a status report that pursuit of the neuroimmunology testing was delayed due to Petitioner's relocation and a family emergency. (ECF No. 79.)  He further advised that Petitioner was seeking new counsel. (*Id.*)

Mr. Golvash filed a motion to withdraw as counsel on December 11, 2014.  (ECF No. 80.)  He indicated that he and Petitioner had differing views of the case. (ECF No. 80, pp. 2-3.)

On December 12, 2014, Mr. Golvash filed a motion for interim attorneys' fees and costs in the amount of $33,800.68. (ECF No. 81.)  On January 5, 2015, Mr. Golvsh filed a supplemental motion for attorneys' fees and costs requesting an additional $4,727.64 on behalf of Petitioner's former counsel, Mr. Tankard. (ECF No. 82.)

On January 5, 2015, the parties filed a joint stipulation agreeing to interim attorneys' fees and costs for Mr. Golvash in the reduced amount of $28,500.00 and for Mr. Tankard in the requested amount of $4,727.64. (ECF No. 83.)  I issued a Decision awarding attorneys' fees and costs in accordance with the parties' stipulation. (ECF No. 84.)

On January 12, 2015, I granted Mr. Golvash's motion to withdraw as counsel, and on February 11, 2015, Robert Kelly filed a consented motion to substitute as attorney of record. (ECF Nos. 89, 93.)

On March 30, 2015, Mr. Kelly advised during a status conference that he intended to seek an expert opinion from a neuroimmunologist. (ECF No. 99.)  Ultimately, Mr. Kelly was allowed until August 31, 2015, to file the expert report. (ECF No. 101.)  I warned, however, that after that date I would proceed to decide the case on the existing record, since it had already been pending for more than 12 years. (*Id.*)

On August 31, 2015, Renee Gentry, acting on behalf of the Vaccine Injury Clinic of George Washington University Law School ("GWU"), filed a consented motion to substitute as counsel. (ECF No. 102.)

On September 1, 2015, I granted a 60-day enlargement of time until October 30, 2015, to file an expert report. (ECF No. 103.)  I noted that the enlargement of time was appropriate due to the change of counsel, but again advised that I would decide the case on the existing record after that date. (*Id.*)

On October 30, 2015, Petitioner filed a motion to voluntarily dismiss her case pursuant to Rule 41(a). (ECF No. 104.)  Petitioner indicated that after a diligent search she was unable to locate a new expert, and had exhausted all feasible means of pursuing the claim. (ECF No. 104, p. 1.)  A decision dismissing the case was filed on November 2, 2015. (ECF No. 105.)

On April 12, 2016, Ms. Gentry filed a motion for attorneys' fees and costs on behalf of both the Vaccine Injury Clinic and Mr. Kelly. (ECF No. 110.)  Respondent filed a response opposing the motion on April 27, 2016. (ECF No. 111.)  Petitioner filed a reply on May 9, 2016. (ECF No. 112.)  The total amount of attorneys' fees and costs requested is $31,682.50, of which $19,687.50 are Mr. Kelly's fees and costs. (ECF No. 110, pp. 2-3.)

## II

**LEGAL STANDARD FOR AWARDING ATTORNEYS' FEES AND COSTS**

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. § 300aa-15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case, if the petition was filed in good faith and with a reasonable basis.[2] *Id.* "The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Whether a claim is brought in "good faith" is a subjective determination, long understood as requiring an "honest belief" that a claim is appropriate for compensation. *See, e.g., Chronister v. HHS*, No. 89-41V, 1990 WL 293438, *1 (Fed. Cl. Spec. Mstr. December 4, 1990). The standard for finding good faith has been described as "very low" and findings that a petition lacked good faith are rare. *Heath v. HHS*, No. 08-86V, 2011 WL 4433646, *2 (Fed Cl. Spec. Mstr. August 25, 2011). In fact, it has been said that petitioners are entitled to a presumption of good faith absent direct evidence of bad faith. *Grice v. HHS*, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

The question of whether a claim has a "reasonable basis" is objective, and must be affirmatively established by the petitioner. *McKellar v. HHS*, 101 Fed. Cl. 297, 305 (Fed. Cl. 2011). The claim of a "reasonable basis" must be supported by more than "unsupported speculation." *Perreira v. HHS*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Rather, to have a reasonable basis, a claim must be supported, at a minimum, by medical records or medical opinion. *Chronister*, 1990 WL 293438 at *1.

---

[2] Section 15(e) of the Vaccine Act sets out the relevant provisions regarding attorneys' fees and costs:

> (1) In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover --
>
> (A) reasonable attorneys' fees, and
>
> (B) other costs,
>
> incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioners' reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

§300aa-15(e)(1).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS*, 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rupert v. HHS*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. *Perreira v. HHS*, 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. HHS*, No. 99-382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd*, 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS*, No. 02-1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part*, 86 Fed. Cl. 201 (2009).  In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433-34). Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obliged to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

## III

### RESPONDENT'S ARGUMENTS

In her response to the instant motion, Respondent disavowed any role in determining the appropriate amount of attorneys' fees and costs in Vaccine Act cases, and stressed both petitioner's burden of proof and the special master's independent authority to address the amount of fees and costs. (ECF No. 111, pp. 1-2.) Nonetheless, Respondent objected to the request for fees and costs on the basis that, despite being reviewed by two subsequent attorneys, no substantive development of the record occurred in this case since Mr. Golvash withdrew. (ECF No. 111, p. 2.) Respondent contended that there was no reasonable basis to proceed in the case following Mr. Golvash's departure. (*Id*.) Respondent noted that no additional expert report was ever filed and that the case ultimately resolved by voluntary dismissal. (*Id*.) Respondent took particular exception to the fees billed by Mr. Kelly as he withdrew without advancing the case substantively. (ECF No. 111, p. 2, fn. 2.)

## IV

## PETITIONER'S ARGUMENTS

In reply to Respondent's opposition, Petitioner contended that Respondent's argument is unsound. (ECF No. 112, p. 1.) Petitioner argued that "Petitioners did not lose a reasonable basis upon the withdrawal of Attorney Golvash." (*Id*.) In that regard, Petitioner stressed that I had allowed Petitioner the opportunity, upon Mr. Golvash's withdrawal, to seek out a new attorney and an additional expert. (*Id*.)

With regard to Mr. Kelly, Petitioner noted that Mr. Kelly's billing records reflect that he sought out expert support in good faith, but was unable to secure the cooperation of any witness. Petitioner further noted that Mr. Kelly, having exhausted his resources, advised Petitioner to seek counsel from an attorney who might have other available experts. (ECF No. 112, p. 2.)

Petitioner further noted that the Vaccine Injury Clinic often takes on cases for review that other attorneys less experienced in Vaccine Act cases, such as Mr. Kelly, are unable to prosecute. (ECF No. 112, pp. 2-3.) Moreover, Petitioner stressed that the Vaccine Injury Clinic's review of the case fairly and efficiently drew proceedings to a close while preserving Petitioner's rights regarding the possibility of pursuing a civil action. (*Id*.)

## V

## REASONABLE BASIS AND GOOD FAITH

Both attorney Kelly and attorney Gentry, along with the Vaccine Injury Clinic, had a reasonable basis for entering this case to determine if Petitioner had a viable claim. It is desirable that petitioners in Vaccine Act cases seek counsel in order to facilitate the petitioners' case. If Ms. Gentry had not entered her appearance, then collected and reviewed J.T.G-T.'s medical records, she could not have ethically advised Petitioner to file a Motion for a Dismissal Decision. By helping Petitioner determine if her claim was viable, attorney Gentry and the Vaccine Injury Clinic facilitated the resolution of a case that had been pending since December 2002.

Neither attorney Kelly nor attorney Gentry could be expected to simply accept Respondent's competing submissions as the final word regarding the merits of this case. Nor does the withdrawal of Petitioner's former counsel itself speak directly to the merits of the case. Significantly, at the time attorney Kelly took up this case, Petitioner was actively seeking the opinion of an expert in neuroimmunology. It was not unreasonable for attorney Kelly to initially continue that search for a reasonable period of time, and to subsequently turn the case over to more experienced counsel when he was unable to secure an expert. Respondent has not articulated a basis for concluding that the reasonableness of the search necessarily ended with Mr. Golvash's efforts. Moreover, the fact of Mr. Kelly's efforts likely contributed to Ms. Gentry's ultimate success in persuading Petitioner that dismissal was appropriate.

Based on all the circumstances, I find that it was reasonable for attorneys Kelly and Gentry to take the case, to spend a reasonable amount of time determining whether it was viable, and then to persuade Petitioner to seek a voluntary dismissal.

## VI

## AMOUNT OF THE AWARD

*A. Hourly Rates*

The hourly rates requested by Petitioner on behalf of the GWU Vaccine Injury Clinic are largely consistent with prior awards granted by other special masters. Specifically, Special Master Gowen previously awarded the requested rates for Mr. Shoemaker ($415 and $430) and for Ms. Gentry ($400 and $415) for work performed during the same years. *See Boylston v. HHS*, No. 11-117V, 2016 WL 3080574, *3 (Fed. Cl. Spec. Mstr. May 10, 2016). However, he reduced the hourly rate for the law students from $150 per hour to $145 per hour. (*Id*. at *4.) The Chief Special Master also recently awarded attorneys' fees and costs for the GWU Vaccine Injury Clinic at the same rates as Special Master Gowen. *See Miller v. HHS*, No. 13-914V (Fed. Cl. Spec. Mstr. April 12, 2016). Both of these decisions are based on the reasoning in *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), a decision which explored the "forum rates" for Vaccine Act cases in depth, and which has been widely cited. I agree with these decisions and see no reason to depart from them. Therefore, I award fees for the GWU Vaccine Injury Clinic at the following rates:

> **$415 per hour for work performed by Clifford Shoemaker in 2015;**
> **$430 per hour for work performed by Clifford Shoemaker in 2016;**
> **$400 per hour for work performed by Renee Gentry in 2015;**
> **$415 per hour for work performed by Renee Gentry in 2016; and**
> **$145 per hour for work performed by GWU law students in 2015 and 2016.**

Mr. Kelly charged $250 per hour in this case. (ECF No. 110, p. 46.) Mr. Kelly is a solo practitioner located in Fort Lauderdale, Florida. (ECF No. 110, pp. 39-40.) He has been admitted to the bar since 1977 and averred that, prior to becoming a solo practitioner, he charged as much as $425 per hour at firms within Broward County, Florida. (*Id.*) Mr. Kelly's primary area of focus is personal injury litigation. (*Id.*) I am satisfied that Mr. Kelly has billed at an appropriate hourly rate. Although he is inexperienced in this Program, he is a seasoned attorney with nearly 40 years as a member of the bar of Florida. **Therefore, I will award Mr. Kelly attorneys' fees at the requested rate of $250 per hour.**

*B. Attorney Time*

After reviewing the billing records in this case, I find no reason to reduce the hours billed by the GWU Vaccine Injury Clinic. Mr. Kelly, however, included in his billing 7.5 hours devoted to reading the Vaccine Act and studying the rules of this Program. Mr. Kelly also billed an hour of time for seeking advice from a more experienced Vaccine Act attorney, Robert Krakow. Such activities are not compensable. *See, e.g., Carter v. HHS*, No. 04-1500V, 2007 WL 2241877, *5 (Fed. Cl. Spec. Mstr. July 13, 2007) (noting that "an inexperienced attorney may not ethically bill his client to learn about an area of the law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task."). **Accordingly, Mr. Kelly's hours are reduced to 70.25 hours**.

*C. Costs*

Petitioner also seeks reimbursement for her own personal out-of-pocket expenses related to the genetic testing and other consultations she sought for J.T.G-T. while prosecuting this case, including consultation and testing fees, as well as copying, shipping, and travel expenses. (ECF No. 110, pp. 8-9.) After reviewing the invoices submitted by Petitioner, I find these expenses reasonable, on the whole, and award a total of $5,256.40 to Petitioner for these expenses.[3]

Mr. Kelly also submitted documentation for $90.26 in litigation costs.[4] After reviewing the receipts and invoices submitted, I find these expenses reasonable and award $90.26. The GWU Vaccine Injury Clinic did not incur any expenses in this case. (ECF No. 110, p. 3.)

*D. Summary*

In conclusion, I award Petitioner a total of $29,452.01 in attorneys' fees and costs, including $11,799.25 for the George Washington University's Vaccine Injury Clinic and $17,652.76 for attorney Robert Kelly. This accounts for the reduction in Mr. Kelly's hours from 78.75 hours to 70.25 hours as well as the reduction in the hourly rate for the GWU law students from $150 per hour to $145 per hour. This amount was calculated as follows:

Clifford Shoemaker:
    8.7 hours (at $415 per hour for 2015) = $3,610.50
    2.3 hours (at $430 per hour for 2016) = $989.00

Renee Gentry:
    3.6 hours (at $400 per hour for 2015) = $1,440.00
    .2 hours (at $415 per hour for 2016) = $83.00

GWU Law Students:
    39.15 hours (at $145 per hour) = $5,676.75

**GWU Vaccine Injury Clinic Total = $11,799.25**

Attorney Robert Kelly:
    70.25 hours (at $250 per hour) = $17,562.50
    Attorney costs = 90.26

**Robert Kelly Total = $17,652.76**

---

[3]    This amount reflects a reduction of $32.23. Petitioner submitted a receipt in that amount from a store called Phydeaux. (ECF No. 110, p. 34.) The charge is entirely unexplained and appears, on its face, to be a charge for dog toys. *See, e.g.*, *Rasmussen v. HHS*, No. 91-1566V, 1996 WL 752289 (Fed. Cl. Spec. Mstr. Dec. 20, 1996) (deducting costs that are not adequately explained).

[4]    Mr. Kelly's timesheet actually indicated that he had $98.26 in costs. (ECF No. 110, p. 58.) However, he also submitted an additional invoice for costs in which an $8.00 charge was removed. (*Id.*, p. 59.) Moreover, no receipt was provided for an $8.00 charge.

I also award costs to Petitioner in the amount of $5,256.40 in out-of-pocket litigation expenses, which reflects a reduction of $32.23 for an inadequately explained cost.

## VII

## CONCLUSION

For the foregoing reasons, I award the following:

- **$11,799.25 in attorneys' fees to be paid in the form of a check payable to Petitioner and Petitioner's counsel, the George Washington University Vaccine Injury Clinic; and**

- **$17,652.76 in attorneys' fees and costs to be paid in the form of a check payable to Petitioner and Petitioner's counsel, Robert Kelly, Esq.; and**

- **$5,256.40 in out-of-pocket expenses by Petitioner to be paid in the form of a check made payable to Petitioner.**

The Clerk of this Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master